# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARVIN NINO, et al. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-cv-2876 |
| ) | |
| JEH JOHNSON, et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants Jeh Johnson, Sarah Saldeña, Ricardo Wong, and Jose T. Martinez (collectively, "Defendants") have moved the Court to dismiss the Complaint of Marvin Nino, Norma Morales-Nino, Angel Nino, Maria Nino, and Santiago Nino (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). (R.14). For the following reasons, the Court grants Defendants' motion and dismisses the Complaint with prejudice.

## BACKGROUND[1]

In March 2016, Plaintiffs filed this action against the Secretary of the Department of Homeland Security ("DHS"), the Director of Immigration and Customs Enforcement ("ICE"), the Field Director of the ICE Chicago Field Office, and a Docket Officer in the ICE Chicago Field Office. Plaintiffs request habeas corpus relief, declaratory judgment, mandamus and injunctive relief arising from the allegedly unlawful deportation of Plaintiff Norma Morales-

---

[1] In considering Defendants' Rule 12(b)(1) challenge, the Court "properly look[s] beyond the jurisdictional allegations of the complaint and view[s] whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

Nino. (R.1, Compl. ¶ 1). Plaintiffs seek, *inter alia*, to have Mrs. Morales returned to the United States and placed in the position she was in prior to Defendants' actions. (*Id.*).

Mrs. Morales is a native and citizen of Mexico who entered the United States in May 2003 without authorization. (R.1, Compl. ¶¶ 3, 12; R.14-2, Martinez Decl. ¶ 5). She is the wife of Plaintiff Marvin Nino and the mother of Plaintiffs Angel Nino, Maria Nino, and Santiago Nino, two of whom are United States citizens. (R.1, Compl. ¶¶ 4, 12). Law enforcement arrested Mrs. Morales at her workplace for allegedly using improper work documents, and subsequently turned her over to ICE. (*Id.* ¶ 13). The criminal charges against Mrs. Morales were ultimately dismissed. She has no criminal convictions. (*Id.*).

On February 9, 2009, DHS initiated removal proceedings against Mrs. Morales, releasing her on her own recognizance. (R.14-2, Martinez Decl. ¶ 6). On May 24, 2010, an immigration judge ("IJ") sitting in Omaha, Nebraska issued an order of removal against Mrs. Morales. (*Id.* at ¶ 7). Mrs. Morales appealed that decision to the Board of Immigration Appeals ("BIA"). BIA remanded the case back to the IJ. (*Id.* ¶ 8). On April 2, 2012, the IJ again ordered removal. (*Id.* ¶ 9). BIA denied Mrs. Morales' appeal of that order. (*Id.* ¶ 10). Mrs. Morales then appealed to the Eight Circuit, which dismissed her petition for review on July 2, 2013. (*Id.* ¶ 11).

In 2013, meanwhile, DHS initiated removal proceedings against Mrs. Morales' husband, Plaintiff Marvin Nino. (R.1, Compl. ¶ 15). Mr. Nino has "no criminal record other than traffic violations and a single minor conviction." (*Id.*). In late 2013, Plaintiffs' counsel submitted a request for prosecutorial discretion with respect to both Mr. Nino and Mrs. Morales-Nino, based on ICE's 2011 policy memo entitled, "Exercising Prosecutorial Discretion Consistent with Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention and Removal of Aliens" (the "ICE Policy Memo"). (*Id.* ¶¶ 16-17). In December 2013, ICE informed

2

Plaintiffs' counsel that it would approve Mr. Nino's request, but that "Mrs. Morales' request would need to be forwarded to ICE officers in Chicago because her case had already been reviewed by the Eighth Circuit." (*Id.* ¶¶ 18, 35). Mrs. Morales then filed an Application for Stay of Removal, which ICE subsequently denied. (*Id.* ¶¶ 19, 21).

After taking Mrs. Morales into custody, ICE Docket Officer Jakcubzak—who is not a defendant—agreed to issue an Order of Supervision (the "OS") instead of executing the Removal Order. (*Id.* ¶¶ 20, 22-23). According to Plaintiffs, the factors influencing this decision were: "(1) the fact that her husband had been granted [prosecutorial discretion] and was allowed to stay in the United States rather than be removed; (2) the fact that she had two children who were United States Citizens and another child who was prima facie eligible for Deferred Action for Childhood Arrivals ("DACA"); (3) the fact that she has no criminal convictions; (4) the fact that she is an outstanding mother, involved with her children's school and education and an upstanding member of the community; (5) the length of time she and her husband had been in the United States ((20 years); and (6) the severe hardship that removing her would have on her children and husband." (*Id.*). ICE required that Mrs. Morales wear an ankle bracelet and that she stay within the borders of Illinois. (*Id.*). She "complied with all requests and requirements of her OS." (*Id.* ¶ 24).

In August 2014, ICE transferred Mrs. Morales' case from the Alternative to Detention (ATD/GPS) Unit to the Non-Detain Unit with Telephonic Reporting. (R.14-2, Martinez Decl. ¶ 12). She received a revised OS in September 2014. (*Id.*). On February 24, 2015, Mrs. Morales reported to Defendant Martinez in the ICE Chicago Field Office, per OS requirement. Martinez reviewed her case and informed her that ICE would execute the Removal Order, as an IJ had twice ordered her removal, and the Eighth Circuit had denied her petition for review. (*Id.* ¶ 13).

According to Plaintiffs, however, Defendant Martinez provided no explanation for the revocation of the OS, either during that February 24, 2015 meeting or in subsequent conversations with Plaintiffs' counsel. (R.1, Compl. ¶¶ 28-30). Instead, Martinez "inaccurately interrogated Mrs. Morales on the fact that she had obtained a valid work permit," told her that "she had no entitlement to said permit," and threatened "to arrest and detain her." (*Id.*).[2] He engaged in other "loud and aggressive behavior" and, with respect to her OS, "simply stated that Officer Jakcubzak no longer worked there and that he was revoking the [OS]." (*Id.* ¶¶ 27-28, 30, 32-34).

On May 28, 2015, Mrs. Morales filed another Application for Stay of Removal, which ICE again denied "in a few sentence decision that did not analyze any of the individual circumstances of Mrs. Morales' case, [including] that her husband had been granted prosecutorial discretion." (*Id.* ¶ 36). According to Plaintiffs, this denial—and the decision to revoke the OS—ran counter to an "ICE Operating Instruction" providing that an "informal interview with the alien is to be conducted to afford the alien the opportunity to respond to the reasons for the revocation." (*Id.*; R.1-1, Exhibit C to the Compl. at § 17.12(b)). In addition, Plaintiffs note that the February 24, 2015 meeting occurred days after a district court in Texas issued an injunction barring federal agents from implementing Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA") and from expanding DACA. *See Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. Feb. 16, 2015), *aff'd*, 809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015), *cert. granted*, 136 S. Ct. 906, 193 L. Ed. 2d 788 (2016). (R.1, Compl. ¶ 31). On June 19, 2015, Mrs. Morales self-deported from Chicago to Mexico. (R.14-2, Martinez Decl. ¶¶ 14-15).

---

[2] At the time, Mrs. Morales *was* working under an authorized work permit. (R.1, Compl. ¶ 28; R.19-1 ("Final Order of Deportation—(c)(18). File Form I-765 with a copy of the order of supervision and a request for employment authorization…")).

Plaintiffs now bring six counts against Defendants, alleging that: (1) the revocation of the OS was arbitrary and capricious and violated Plaintiffs' due process rights; (2) the "flaws in the decision making process" concerning Mrs. Morales' stay applications violated Plaintiffs' due process rights; (3) Defendants acted with prosecutorial vindictiveness against Mrs. Morales for exercising her right to an appeal, in violation of her due process rights; (4) the denial of Mrs. Morales' stay application following *Texas v. United States*, was the result of prosecutorial vindictiveness; (5) the deportation of Mrs. Morales violated Article 23 of the International Covenant on Civil and Political Rights ("ICCPR"); and (6) Plaintiffs detrimentally relied on the OS, estopping Defendants from revoking it without cause. (R.1, Compl. ¶¶ 39-69). Plaintiffs bring this action under the United States Constitution, the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1255, the federal habeas statute, 28 U.S.C. § 2241, the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, The All Writs Act, 28 U.S.C. § 1651(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.* ¶ 9).

Defendants now move to dismiss for lack of subject-matter jurisdiction. In particular, Defendants argue that: (1) the INA deprives district courts of jurisdiction to hear challenges relating to the commencement, execution, or adjudication of removal orders; (2) the habeas statute does not confer jurisdiction because Mrs. Morales is not in Defendants' custody; (3) the APA expressly bars judicial review of this matter; and (4) the ICCPR does not create a private right of action enforceable in federal court. (R.14-1).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim if it lacks subject-matter jurisdiction over it. *See Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014) ("we are required to consider subject-matter jurisdiction as the first question in every case . . . and we

must dismiss this suit if such jurisdiction is lacking") (citations omitted); *see also* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). In reviewing a Rule 12(b)(1) motion to dismiss, courts take all well-pleaded factual allegations in the complaint as true. *Smith v. United States*, 196 F.3d 774, 776 n.1 (7th Cir. 1999). Courts may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Calderon v. United States*, 123 F.3d 947, 951 n.2 (7th Cir. 1997); *see also Apex Digital*, 572 F.3d at 443-44; *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof[.]" *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008); *see also Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).

## ANALYSIS

**I. The Judicial Review Bar of 8 U.S.C. § 1252(g)**

**A. General Applicability**

Defendants first argue that the judicial review bar embodied in 8 U.S.C. § 1252(g) deprives the Court of subject-matter jurisdiction in this case. This INA provision "blocks review in the district court of particular kinds of administrative decisions." *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002). In particular, it provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). As the Supreme Court explained with respect to Section 1252(g):

> The provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." (Emphasis added.) There are of course many other decisions or actions that may be part of the deportation process-such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order. It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S. Ct. 936, 943, 142 L. Ed. 2d 940 (1999).

Here, Plaintiffs cite to *Reno* to argue that the decision to revoke the OS was not "within the categories set out in 1252(g)" and, therefore, judicial review is available. (R.19, Response Br. at 5-7; *see also Reno*, 525 U.S. at 487 ("§ 1252(g) applies to only a limited subset of deportation claims")). Defendants, by contrast, argue that the decision to revoke an OS is a discretionary decision related to removal. (R.20, Reply at 1-2 ("An alien who has been ordered removed may be released from detention under on an order of supervision pending the alien's removal [until] ICE has secured travel documents and is prepared to remove an alien")). Indeed, federal regulations contemplate agency discretion with respect to this issue. *See* 8 C.F.R. §§ 241.5, 241.4(*l*)(2) ("Release may be revoked in the exercise of discretion when, in the opinion of the revoking official . . . (iii) [i]t is appropriate to enforce a removal order")). In addition, the OS revocation was clearly related to the execution of Mrs. Morales' final removal order. *See Reno*, 525 U.S. at 485 ("Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed"). The decision to revoke the OS, in other words, "arose from" the decision to "execute [the] removal order." *See* 8 U.S.C. § 1252(g). Under both statutory text and judicial precedent, Section 1252(g) bars judicial

7

review of ICE's revocation decision. *See Sharif*, 280 F.3d at 787 (Section 1252(g) "names three administrative actions—decisions to 'commence proceedings, adjudicate cases, or execute removal orders'—and interdicts all judicial review 'arising from' those actions, unless some other part of § 1252 allows review"). The agency's decision to deny Mrs. Morales' two stay applications likewise arose from its decision to execute a removal order and is barred from judicial review. *See id.* (holding the same); *Albarran v. Wong*, 157 F. Supp. 3d 779, 784-85 (N.D. Ill. 2016), *appeal dismissed* (Apr. 13, 2016) ("Consistent with our understanding of § 1252(g) and governing precedent, we lack jurisdiction to hear any of Flores' claims[,]" including those challenging "Defendants' discretionary denials of his requests for a stay of removal, for rescission of the reinstatement order, and for release on an order of supervision")).

As other courts have recognized, moreover, "[a]n alien cannot evade § 1252(g) by attempting to re-characterize a claim that, at its core, attacks the decision to execute a removal order." *Albarran*, 157 F. Supp. 3d at 784. Here, although Plaintiffs brought a variety of legal claims—including procedural due process, prosecutorial vindictiveness, and equitable estoppel— each one seeks review of Defendants' discretionary determinations related to the execution of the removal order. (R.1, Compl. ¶¶ 39-75 (each requesting, among other relief, an order "that Mrs. Morales be brought back into the United States and her prior OS be reinstated")).[3] Accordingly, under binding Seventh Circuit law and the plain text of Section 1252(g), the Court lacks jurisdiction to hear Plaintiffs' legal challenges, unless another provision of Section 1252 allows it. *See Sharif*, 280 F.3d at 787 (Section 1252(g) "does not differentiate among kinds of relief"); *Fedorca v. Perryman*, 197 F.3d 236, 240 (7th Cir. 1999) ("At the outset, we must decide how Fedorca's claim should be characterized; if Fedorca is seeking review of one of the three listed

---

[3] Plaintiffs' merit-based defense of their estoppel claim misses the mark. (R.19, Response Br. at 12). Defendants challenge this claim on Rule 12(b)(1) grounds, not Rule 12(b)(6) grounds.

decisions or actions in § 1252(g), the federal courts lack subject matter jurisdiction to entertain his § 2241 petition"). Importantly, Plaintiffs identify no other provision of Section 1252 allowing review. To the contrary, Mrs. Morales already sought appropriate judicial review of her removal order when she appealed the IJ's decision to the Eighth Circuit in 2012-2013. As the Seventh Circuit has recognized:

> The statutory framework established in 8 U.S.C. § 1252 channels and limits the jurisdiction of the federal courts over challenges to an alien's removal order. The general rule is that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be *the sole and exclusive means for judicial review* of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5) (emphasis added). The "appropriate court of appeals" is "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings," *id.* § 1252(b)(2), which in this case would be the Eleventh Circuit because the IJ's proceedings occurred in Georgia.

*Rivas-Melendrez v. Napolitano*, 689 F.3d 732, 736-37 (7th Cir. 2012). Here, too, "[n]either the Seventh Circuit nor any district court has jurisdiction to hear a challenge to [the] removal order." *See id.*

### B. The Exception to Section 1252(g)

The Seventh Circuit has, however, read an exception into Section 1252's judicial review bar, permitting review "in the rare cases which present substantial constitutional issues or bizarre miscarriages of justice—issues over which the administrative agencies lack jurisdiction to decide." *Bhatt v. Reno*, 204 F.3d 744, 746-47 (7th Cir. 1999) (citations and quotations omitted); *see also Chapinski v. Ziglar*, 278 F.3d 718, 721 (7th Cir. 2002). Plaintiffs urge the Court to qualify this as a "rare case," arguing that they "have alleged specific facts which show a clear problem with Defendants' decision making process where Mrs. Morales, with no criminal record, is denied the right to stay while her husband, with a minor conviction, is allowed to stay. In addition, the Complaint alleges that the decision making process was spurred on by an

9

adjudicator who was not acting impartially. These are serious due process violations." (R.19, Response Br. at 10-11, 7).

Although the Court is sympathetic to Mrs. Morales' situation, it cannot conclude that ICE's ultimate decision to execute her removal order, following two IJ decisions and successive appeals to the BIA and the Eighth Circuit throughout 2009-2013, and to exercise prosecutorial discretion with respect to her husband in 2013, amounted to a "substantial" constitutional violation or a "bizarre" miscarriage of justice under Seventh Circuit law. *See Bhatt*, 204 F.3d at 747. "[E]xercises of prosecutorial discretion by the DHS generally are immune from judicial review." *Young Dong Kim v. Holder*, 737 F.3d 1181, 1185 (7th Cir. 2013) (citing *Reno*, 525 U.S. at 482-92). As the Supreme Court made clear in *Reno*:

> Even in the criminal-law field, a selective prosecution claim is a *rara avis*. Because such claims invade a special province of the Executive—its prosecutorial discretion—we have emphasized that the standard for proving them is particularly demanding, requiring a criminal defendant to introduce "clear evidence" displacing the presumption that a prosecutor has acted lawfully.

*Reno*, 525 U.S. at 489. In this case, Plaintiffs have not offered "clear evidence" of prosecutorial misconduct against Mrs. Morales arising from any of: (i) her decision to appeal the second IJ decision to the Eighth Circuit; (ii) her decision to obtain a federal work permit pending her removal; or (iii) the decision in *Texas v. United States*. Allegations of Defendant Martinez's personal hostility—although concerning—do not make his discretionary conduct reviewable in federal court. Similarly, that one immigration official recognized certain equities in accommodating Mrs. Morales' situation pending removal does not, alone, render the agency's later decision to execute the removal order constitutionally infirm. This is not, in short, the "rare case in which the alleged basis of discrimination is so outrageous" that the Court can review an

exercise of prosecutorial discretion.[4] *See Reno*, 525 U.S. at 489-91. Plaintiffs have offered no authority on this point convincing the Court to hold otherwise. *See Young Dong Kim*, 737 F.3d at 1185 ("Whether to exercise the prosecutorial discretion outlined in the [ICE Policy Memo] plainly comes within the purview of [S]ection 1252(g) and the Supreme Court's decision in [*Reno*]. We therefore lack jurisdiction to review this claim"); *contra LaGuerre v. Reno*, 164 F.3d 1035, 1040 (7th Cir. 1998) ("Suppose the [BIA] ordered an alien deported on the basis of a criminal conviction that it knew had been vacated, but it didn't care because the alien was black. We have expressed doubt that Congress intended to forbid such orders to be challenged in court")).

Furthermore, Plaintiffs' argument concerning Defendants' purported failure to make an individualized determination on Mrs. Morales' stay application does not affect the present Rule 12(b)(1) analysis. (R.19, Response Br. at 8-10). While Plaintiffs' cited authorities establish that the BIA's failure in this respect may constitute a due process violation reviewable in the appropriate Court of Appeals, *see e.g.*, *Rhoa-Zamora v. I.N.S.*, 971 F.2d 26 (7th Cir. 1992), none supports the Court's jurisdiction in this case. To the contrary, as noted above, "[r]eview by district courts of [such action] is not otherwise provided for in the statute and is therefore blocked. So if [the plaintiff] now attempts to characterize [her] habeas suit as a challenge to the

---

[4] Additionally, it is not clear to the Court that it—as opposed to the appropriate Court of Appeals—would have the requisite jurisdiction. *See Singh v. Reno*, 182 F.3d 504, 510 (7th Cir. 1999), *as amended on denial of reh'g* (Aug. 10, 1999) ("exclusive responsibility for the prevention of miscarriages of justice now rests with the courts of appeals"); *Iniquez-Velasquez v. I.N.S.*, 210 F.3d 375 (7th Cir. 2000) ("For these issues, deportees can seek the safety valve of direct review in the court of appeals for judicial correction") (citation omitted); *see also* 8 U.S.C. §§ 1252(a)(2)(D), 1252(b)(9); *Mutebi v. Mukasey*, No. 07-CV-02654-REB-KLM, 2008 WL 4297035, at *8 (D. Colo. Sept. 11, 2008) (collecting cases and noting, "[u]pon review of the plain language of Section 1252(a)(2)(D), as well as the opinions of a majority of district courts, this Court agrees that it is clear that Congress meant for the appropriate court of appeals to determine constitutional challenges") (citation and quotation omitted).

*execution* of his removal order, there can be no doubt that § 1252(g) prevents the district court from considering this claim." *See Rivas-Melendrez*, 689 F.3d at 738 (emphasis in original). For the same reason, Defendants' purported failure to follow their own operating procedures and/or regulations when revoking Mrs. Morales' OS does not bar the operation of Section 1252(g).[5] *See id.*

Plaintiffs' cited authorities do not compel a different result. In particular, although the district court in *Ying Fong v. Ashcroft* granted a habeas petition arising from the government's "nearly instantaneous removal" of an alien in contravention of both federal regulations and a court order, there is no mention of Section 1252(g) in that court's decision. *See* 317 F. Supp. 2d 398, 402-05 (S.D.N.Y. 2004), *amended on reconsideration in part sub nom. Fong v. Ashcroft*, No. 03 CIV. 7261 (AKH), 2004 WL 1348994 (S.D.N.Y. June 15, 2004). In addition, the plaintiff in *Ying Fong* sought, and received, an "order that she be returned to the United States… to pursue whatever remedies she could have pursued in the 72 hours the regulations gave her[.]" *Id.* at 408. Similarly, the Seventh Circuit in *Samirah v. Holder* confirmed the availability of a mandamus remedy for the "limited purpose" of enabling a plaintiff-alien to return to the United States "to pursue his application for an adjustment of status[.]" *See* 627 F.3d 652, 665 (7th Cir. 2010). Here, unlike in *Ying Fong* and *Samirah*, Plaintiffs do not seek Mrs. Morales' return so that she may pursue administrative remedies and/or review in the Court of Appeals. She has already pursued those routes. Instead, Plaintiffs seek an order that "Mrs. Morales be brought back into the United States and her prior OS be reinstated" or that "a Stay of Removal be granted." This request, in effect, asks the Court to permanently overturn the discretionary

---

[5] Here, again, Plaintiffs misconstrue Defendants' Rule 12(b)(1) challenge as a Rule 12(b)(6) challenge. (R.19, Response Br. at 6-8 ("Moreover, Count I states an actionable claim so should not be dismissed . . . .").

determinations of ICE in executing a final removal order. Section 1252(g) plainly prohibits such review.

Accordingly, in the absence of any authority supporting jurisdiction here, the Court holds that 8 U.S.C. § 1252(g) deprives the Court of subject-matter jurisdiction in this case. *See Craig*, 543 F.3d at 876 ("Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof").

## II. The Court Lacks Jurisdiction over Plaintiffs' Habeas Claim

Even setting aside the jurisdictional limitations embodied in 8 U.S.C. § 1252, Mrs. Morales "faces a separate jurisdictional obstacle under the general habeas statute itself." *Rivas-Melendrez*, 689 F.3d at 738. In particular, under the general habeas statute, "[a] person must be 'in custody' of the United States at the time he files his habeas petition for a district court to acquire jurisdiction over the action." *Id.* (citing 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . (3) [h]e is in custody in violation of the Constitution or laws or treaties of the United States. . . .")). Here, Plaintiffs do not dispute that Mrs. Morales has resided in Mexico since June 2015, free from any form of custody. While her removal is a harsh remedy—especially considering that she (i) has no criminal record; (ii) lived in the United States for twelve years; and (iii) is now separated from her family, namely, three children and a husband who received the benefit of prosecutorial discretion—such "unique *hardship* simply does not translate into the kind of unique *restraint* needed to meet the 'in custody' requirement" of the general habeas statute. *Id.* at 739. At this point, the United States exercises "no control or responsibility" over Mrs. Morales. *See Samirah v. O'Connell*, 335 F.3d 545, 551 (7th Cir. 2003). In responding to the present motion, Mrs. Morales did not address these authorities or otherwise establish her entitlement to habeas corpus relief. Because she was

not in custody when she filed her habeas petition, the Court lacks jurisdiction to hear Mrs. Morales' habeas claim. *See Samirah*, 627 F.3d at 661 ("Habeas corpus is a remedy for people in custody; exclusion from the United States is not custody").

## III. Other Statutes and Treaties Do Not Confer Jurisdiction Here

The APA entitles "[a]person suffering legal wrong because of agency action . . . to judicial review thereof." 5 U.S.C. § 702. Such review is not available, however, where "statutes preclude judicial review" or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1), (2). Here, as discussed above, 8 U.S.C. § 1252(g) expressly forecloses judicial review of the agency action in dispute. Accordingly, the Court lacks jurisdiction under the APA pursuant to 5 U.S.C. § 701(a)(1). *See Albarran*, 157 F. Supp. 3d at 786-87 (collecting cases); *Mata v. Sec'y of Dep't of Homeland Sec.*, 426 F. App'x 698, 699-700 (11th Cir. 2011) ("There is no dispute here that Mata is subject to a final order of removal. Because 8 U.S.C. § 1252 bars review of orders of removal in a district court, neither 28 U.S.C. § 1361 (the mandamus statute), 5 U.S.C. §§ 701 *et seq.* (APA), or 28 U.S.C. § 1331 (the federal question statute) provided a basis for district court jurisdiction over Mata's claims"); *Lalani v. Perryman*, 105 F.3d 334, 337 (7th Cir. 1997) ("the APA is not a useful tool for aliens challenging immigration decisions").

In addition, neither the All Writs Act nor the Declaratory Judgment Act provides an independent basis of jurisdiction. *See Mata*, 426 F. App'x at 699 ("the Declaratory Judgment Act does not, of itself, confer jurisdiction upon the federal courts"); *Jung Ok Seol v. Holder*, No. 13-CV-1379, 2013 WL 3835370, at *3 (N.D. Ill. July 24, 2013) (recognizing the same and citing *GNB Battery Techs, Inc. v. Gould, Inc.*, 65 F.3d 616, 619 (7th Cir. 1995)); *In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001) ("The [All Writs] Act does not enlarge our jurisdiction"). In

14

addition, Section 1252(g) applies notwithstanding these statutes. *See* 8 U.S.C. § 1252(g) ("Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . [to] execute removal orders"); *see also Hoever v. Dep't of Homeland Sec.*, 637 F. App'x 565, 567 (11th Cir. 2016) ("The district court also lacked jurisdiction over his petition for a writ of prohibition because the All Writs Act does not provide an independent basis for jurisdiction and the INA strips jurisdiction from the district court with regard to issues arising from the proposed removal of an alien") (citing 8 U.S.C. §§ 1252(b)(9) and (g)); *Barrios v. Attorney Gen. of U.S.*, 452 F. App'x 196, 198 (3d Cir. 2011).

Finally, the Court cannot grant relief under the ICCPR because it is not a self-executing treaty, nor has Congress passed implementing legislation. *See Martinez-Lopez v. Gonzales*, 454 F.3d 500, 502 (5th Cir. 2006); *see also Guaylupo-Moya v. Gonzales*, 423 F.3d 121, 133 (2d Cir. 2005); *United States v. Duarte-Acero*, 296 F.3d 1277, 1283 (11th Cir. 2002); *Dutton v. Warden, FCI Estill*, 37 F. App'x 51, 53 (4th Cir. 2002); *Ruhaak v. C.I.R.*, 422 F. App'x 530, 532 (7th Cir. 2011) ("The United States has ratified the ICCPR, but the substantive provisions are not self-executing and do not create enforceable obligations"). Customary international law, moreover, "cannot override congressional intent as expressed by statute." *Martinez-Lopez*, 454 F.3d at 502. Here, Plaintiffs cannot override the plain mandate of 8 U.S.C. § 1252(g) by reference to the ICCPR.

## CONCLUSION

While the Court is sympathetic to Mrs. Morales and her family, it simply lacks jurisdiction to review Plaintiffs' claims. Accordingly, the Court grants Defendants' motion under Rules 12(b)(1) and 12(h)(3) and dismisses this case with prejudice.

**Dated:** November 30, 2016

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge